As to the second count; it seems to me, that the decision of the supreme court of the United States in The Active v. U. S., 7 Cranch [11 U. S.] 100, fully applies to the present transactions. In that case the vessel was licensed for the fisheries, and in the night time took on board a cargo of goods of domestic growth and manufacture, and departed from a wharf, but had not left the port at the time of seizure; yet the court held it clear, that the vessel "was employed in a trade, other than that for which she was licensed," contrary to the thirty-second section of the coasting act. Now, there is no other difference between that case and the present, except the departure from the wharf; but that circumstance was not relied on. The act of taking on board the goods, with intent to transport them, seems to have been held a trading within the act.

As to the third count; it appears from the facts, that at the time of both of the transfers to the claimant (and either was sufficient to constitute a forfeiture, the vessel was a licensed vessel; and that immediately afterwards new licenses were taken out, and the vessel was employed under them in the fisheries of the United States. The case, therefore, falls directly within the prohibitions of the thirty-second section of the coasting act, which declares, that a licensed vessel, transferred in whole or in part to any person, not a citizen of the United States and resident therein, shall work a forfeiture of the vessel and the cargo found on board of her. But to rebut this conclusion, the counsel for the claimant has contended that the fifth section of the same act has declared, that no license granted to any ship or vessel shall be considered in force, any longer than such ship or vessel is owned as set forth in the license; and that, by the transfer to the claimant, the license became ipso facto void, and, therefore, the vessel could no longer be considered as a licensed vessel. If this argument be just, it completely defeats the whole operation of this part of the thirty-second section, and avoids the forfeiture in the only case, in which it ought to attach. Such a construction is, therefore, utterly inadmissible. Besides, the license even in this view would not cease, until after the transfer was complete, and the forfeiture would attach at the same instant, and by operation of law would acquire a priority. Plowd. 253, 264. For even an instant may, we learn, be divided for this purpose. See Plowd. 253, etc.; Co. Litt. 185; 14 Vin. Instants. But I do not rely on such niceties. The manifest intent of the fifth section was, that the license should be considered in force no longer than while the ship was held by the same owners; and that a subsequent transfer, even to a citizen of the United States, should not entitle the vessel to the further benefit of it, although such transfer would not work any forfeiture whatsoever. In this view it seems directory to the officers of the United States, as to the allowance of the privileges granted to such vessels. And, indeed, from the peculiar penning of the eighth section of the same act, it seems to result, that the legislature not only intended, that vessels employed in the coasting trade and fisheries should not be owned by foreigners; but also that, even after yielding up that employment, such vessels should not be entitled to carry on a foreign trade, unless registered as ships of the United States, and of course owned exclusively by citizens of the United States.

It is further argued, that supposing the vessel forfeited, yet the cargo is not; (1) because no cargo is forfeited, except what is found on board at the time of the transfer; (2) because the cargo was owned by a bona fide shipper, not being an owner or master or mariner of said ship, and so protected by the thirty-third section of the act.

As to the first point, I am satisfied, that the true construction is, that the cargo found on board at the time of the seizure is forfeited. The object of the legislature was, to punish any illegal trade carried on by persons who either knew, or ought to know, that the vessel is not entitled to such a privilege, but is sailing with false colors.

As to the second point, I answer, that no person appears as claimant but the owner of the schooner, no other person is named in the proceedings as owner; and I cannot decide upon the interests of persons, who do not choose to interpose their claims. I must doubt the real nature of that property, which is defended under cover, and is obtruded so indistinctly on the court, that it has never yet assumed a definite shape, and remains without a local habitation or a name in the cause.

On the whole, I affirm the decree of the court below, with costs.

———

TWO FRIENDS, The (GIBBS v.). See Case No. 5,386.

TWO FRIENDS, The (SHREWSBURY v.). See Case No. 12,819.

TWO FRIENDS, The (UNITED STATES v.). See Case No. 16,577.

TWO HORSES (UNITED STATES v.). See Case No. 16,578.

———

## Case No. 14,290.

### TWO HUNDRED AND EIGHTY-TWO BALES OF COTTON.

[Affirming Case No. 14,291. Nowhere reported; opinion not now accessible.]